PERU CEMETERY COMPANY, INCORPORATED ET AL.
*v.* MOUNT HOPE CEMETERY OF PERU

[No. 28,157. Filed April 8, 1946.]

*Russell J. Wildman,* of Peru, for appellants.

*Hurd J. Hurst* and *Albert H. Cole,* both of Peru, for appellee.

RICHMAN, J.—This is an appeal from an interlocutory order appointing appraisers in an action under the general eminent domain statute, § 3-1701, Burns' 1933, et seq., to condemn real estate for an addition to appellee's cemetery. Objections filed pursuant to § 3-1705, presented issues of fact upon which evidence was heard. The questions for our consideration arise on the evidence.

It is contended first that the action was not brought in appellee's true name. The evidence discloses that the incorporators in their petition to the Board of Commissioners, filed September 6, 1881, requested incorporation in the name of Mount Hope Cemetery of Peru, which was accordingly done. In various documents filed about that time and later in 1912, when there was a merger with another cemetery corporation, the corporation was referred to as Mount Hope Cemetery, using the words "of Peru" or merely "Peru" in a descriptive sense, not as part of the name. After the merger, minutes and by-laws were prepared in the name of Mount Hope Cemetery Association. Apparently these various designations were used indiscriminately. Appellants say that the corporation had a right under ch. 6 of the Acts of 1883 to change its name and that the use of the name "Mount Hope Cemetery Association" in the minutes and other corporate records indicate that the name was so changed. That statute contemplates the recording of the change of name and there is no evidence that any such record was authorized or made. We are of the opinion that on the evidence the trial court was warranted in concluding that the action was brought in appellee's true corporate name.

Two other questions are raised which may be considered together. The evidence shows that for several years prior to 1945 appellee contemplated the acquisition of a 13 acre tract which adjoined appellee's cemetery. The tract was part of a farm of 150 acres owned by the individual appellants, with whom appellee's officers had several conversations looking to the purchase of the 13 acres. No agreement was reached. A notice was published in the Peru Republican, calling a meeting of appellee's stockholders to be held on April 11, 1945, "for the purpose of arranging for acquiring additional land . . ." The meeting was held on that date and purchase or condemnation authorized. On the same day articles of incorporation of appellant Peru Cemetery Company, Incorporated, naming the individual appellants as incorporators, were filed with the Recorder of Miami County. These articles show that the corporation was organized for profit and to conduct a public cemetery business with principal office in Peru, but otherwise contain nothing to indicate where the cemetery was to be located. On the same day was recorded a deed from the individual appellants to the corporate appellant, describing the 13 acres. The fact that the grantee was a cemetery corporation was the only indication in the deed that the land was to be used for cemetery purposes. At that time there were oats growing thereon which were harvested in the following summer. It had not been otherwise used as late as November, 1945, at the time of the hearing resulting in the appointment of appraisers.

Soon after the stockholders' meeting an attorney was employed by appellee and called upon Charles B. Soames, who said that he was the president of appellant corporation and by whom the attorney was greeted

with the words, "I was expecting you." In the conversation ensuing appellee offered $175 an acre, which Soames refused, putting a value of $7,000 an acre on the land. In the conference the attorney obtained a memorandum made by appellants, dated May 4, 1945, showing two sets of tabulations as to the amount per acre that would be received net, after the payment of income taxes, at prices of $300, $500 and $1,000 per acre. Under the first table is a note that it is

> "Based on normal income plus other income for past 3 years. If other income increases, so does tax."

Necessarily these figures were made with reference to the income of the individual appellants and not the corporation which came into existence April 11, 1945.

The action to condemn was filed June 6, 1945. Except for the deed aforesaid, there was no public record and there were no visible monuments to evince an intent that the land was actually to be used by the grantee for cemetery purposes. Sometime in May a surveyor had made a rough sketch of a cemetery for the corporation, but it was never recorded nor brought to the attention of appellee. While the condemnation suit was pending, on September 19, 1945, a plat was recorded, laying out the land in cemetery lots. But what was then done, of course, is immaterial to the issue for the right to condemn must be based on conditions existing when the action was started.

It is not denied that under § 21-106, Burns' 1933 and § 21-301, Burns' 1933 (Supp.), appellee has the power to condemn this real estate, unless precluded by certain language in the latter section, reading:

> ". . . where such grounds have not been theretofore appropriated or set apart by the owners by platting

for public cemetery purposes, in any *cemetery* in Indiana . . ." (Our italics.)

The word *"cemetery"* was substituted for the word "county" when this section was amended in 1941. Appellee stresses the amendment as peculiarly significant, and accordingly urges that the statute must be construed as permitting a cemetery corporation to condemn any real estate so long as it is not a part of a pre-existing cemetery. Obviously appellants had no such cemetery but at most merely a purpose to lay out one in the future.

Appellants insist that land may not be condemned which has been appropriated and that it is not necessary that it be platted, because the words "by the owners by platting for public cemetery purposes" modify only the words "set apart" and do not reach back to the word "appropriated." It will be noted that there is no punctuation clarifying the construction. In common terminology "appropriate" and "set apart" are synonymous. The former is occasionally used in a technical sense, but words in statutes are given their common meaning unless the context shows that another is intended and we find none such in this statute. The use of the two expressions may be tautological but this is not infrequent in statutes. We would not know from the context of this section what other meaning might be intended. The most reasonable construction requires that the appropriation or setting apart must be evidenced by platting. If anything less is permissible it ought at least to consist of some overt act or acts apprising the public that the property has been devoted to cemetery purposes.

One of the allegations of appellee's complaint was that

"... said Defendants and each of them in the organization, and incorporation of said Defendant, Peru Cemetery Company Incorporated, and in the conveyance of the real estate so sought to be purchased and acquired by the Plaintiff herein as above described, to said Defendant, Peru Cemetery Company Incorporated, intended and did the same, solely for the purpose, of hindering, delaying, or preventing the Plaintiff from purchasing or acquiring said real estate for public cemetery purposes."

Within the scope of the issue made by this allegation and appellants' objections, it was within the province of the court to find from the evidence submitted and summarized above that appellants had not in good faith devoted this land to cemetery purposes. The individual appellants were not concerned with the organization of the cemetery until the public announcement of appellee's intention to acquire their land. Their calculations as to what they might obtain net in the sale indicate a purpose to sell for their own benefit. The price, not the right to condemn, was the source of the controversy. These calculations were made after the deed was executed and were based upon the income of the grantors for the preceding three years, not upon the difference between selling price and cost which would have been the corporation's taxable income. There was no platting and no visible sign of appropriation. The intention to plat a cemetery which might be inferred from the deed might also be abandoned at any time. The tract was and remained a part of a farm. The court concluded that the evidence disclosed no bar to appellee's right to condemn and we can not say that there was error.

The order is affirmed.

Note.—Reported in 65 N. E. (2d) 849.