EAGLEN *v.* STATE OF INDIANA.

[No. 30,847. Filed November 22, 1967.]

146

*William B. Miller*, and *Jacob S. Miller*, of Indianapolis, for appellant.

*John J. Dillon*, Attorney General and *Donald R. Ewers*, Deputy Attorney General, for appellee.

HUNTER, C.J.—Appellant Robert Eaglen, defendant below, was indicted along with his wife Virgie Eaglen upon a charge of involuntary manslaughter, and was tried and convicted of such charge in the Criminal Court of Marion County, Division One.

The statutory provisions controlling disposition of this appeal, in pertinent part, read as follows:

§ 10-3405. "Whoever . . . kills any human being without malice, expressed or implied, . . . involuntarily in the commission of some unlawful act, is guilty of manslaughter, . . ." Ind. Anno. Stat. § 10-3405, (1956)

§ 10-813 . . . "Neglect of a child shall consist in any of the following acts, by anyone having the custody or control of the child;

(a) wilfully failing to provide proper and sufficient food, clothing, maintenance, regular school education as required by law, medical attendance or surgical treatment, and a clean and proper home, or (b) failure to do or permit to be done any act necessary for the child's physical or moral well-being: . . ." Ind. Anno. Stat. § 10-813 (1956)

§ 10-814 ". . . 'The person having the care, custody and control of any child,' as used in this chapter (§ 10-812— § 10-816), shall mean any person who has assumed the care of a child, or any person with whom a child is living at the time the offense is committed." Ind. Anno. Stat. § 10-814 (1956)

§ 10-815 "Any parent . . .having the care, custody or control of any child who shall . . . be neglectful of such child . . . shall be deemed to be guilty of 'cruelty and neglect of children' and, upon conviction thereof be fined not to exceed five hundred dollars ($500) to which may be added im-

prisonment in the county jail for a term not exceeding six (6) months; or such person may be imprisoned in the state prison for not less than one (1) year nor more than seven (7) years; . . ." Ind. Anno. Stat. § 10-815 (Supp. 1967).

The evidence in this case, viewed most favorably to the State's case, reveals the following:

Nolan Eugene Eaglen was born June 23, 1963, and was the son of defendant-appellant, Robert Eaglen. Appellant lived with his wife and children in the city of Indianapolis. On November 2, 1963, Nolan Eugene Eaglen died. An autopsy was performed and the cause of death was found to be pneumonia secondary to malnutrition. That is to say, the condition of malnutrition caused pneumonia which caused death. Medical testimony revealed that at the time of death the child showed extreme loss of weight or failure to gain weight, and there were scorings of the skin on the child's back, scrotum, and legs.

Babysitters testified that the bed sheets in the baby's bed were in a filthy condition, that no edible baby food, other than milk was ever seen in the house, that from the time Nolan was four (4) weeks old he began losing weight and getting sores on his body, and that they never saw a physician attending Nolan.

Neighbors testified that more than two (2) weeks before Nolan died he was very thin and sickly looking, his flesh was lying in folds and sores emitting pus covered his lower body.

The record also shows that during much of Nolan's short life, both his father, the defendant, and his mother worked. Appellant testified that he worked whenever he could but that he was home about every night and played with Nolan frequently. Appellant further testified that he never refused to buy food for the baby, that he, appellant, did not know anything about babies and could not tell that the baby was sick but that he had noticed that the baby had body

sores. Appellant admitted giving Nolan a bottle the night before the child died, and that he noticed the child did not want to take the bottle. But he testified he did not observe that Nolan was sick. It is apparent from the record that appellant paid very little attention to the degree of care being given Nolan, and that very little attention was paid to Nolan Eugene Eaglen's physical health.

The only argument appellant urges in his attempt to have this Court reverse his conviction is to the effect that a father fulfills his entire duty as parent of his children by furnishing sufficient money for the support of his children. In support of this proposition, appellant directs the attention of the Court to the statutes of Indiana dealing with desertion and nonsupport of one's family, Ind. Anno. Stat. § 10-1401 et seq. (1956), and to cases decided construing those statutes.

The appellant will encounter no disagreement from this Court in contending that a father has a duty to furnish his children under fourteen (14) years of age with reasonable financial support. Ind. Ann. Stat. § 10-1402 (1956). We do not agree, however, that this is the full extent of a father's duty.

Appellant, in his argument, fails to discuss or even to recognize the existence of Ind. Ann. Stat. §§ 10-813—10-815, *supra,* which delineate a parent's duty to see that his child is properly cared for when such parent has "care, custody and control" of such child. There being no apparent legislative intent to the contrary, except with respect to an expansion of the normal definition of parent so as to include stepfather and stepmother within its meaning, the language of §§ 10-813 to 10-815, *supra,* will be construed according to its ordinary meaning. *Peru Cemetery Co., Inc.* v. *Mount Hope Cemetery of Peru* (1946), 224 Ind. 202, 207, 65 N. E. 2d 849. See also Ind. Anno. Stat. § 1-201 (1956).

§ 10-814, *supra,* provides that the words "person having the care, custody and control of any child . . . shall mean any person who has assumed the care of a child, or any person

with whom a child is living at the time the offense is committed."

By his own testimony the appellant was living with his wife and children, including the now-deceased Nolan Eaglen, prior to and at the time of the death of Nolan Eaglen.

This being the case, appellant was charged with a duty under § 10-813, *supra*, "to do or permit to be done any act necessary for the child's physical or moral well-being." ██ And the fact that a father might entrust the care of his child to his wife or some other person does not relieve the father of his statutory responsibility to see that proper care is given the child.

In the case at bar, it is beyond question that appellant violated this statutory duty with respect to Nolan Eugene Eaglen. The evidence shows that appellant, father of five (5) ██ children, was an experienced father and that he played with the baby in the evenings. For several weeks before the child's death the flesh on his legs was laying in folds, he had bleeding sores on his lower body and his penis was covered with pus. Nevertheless, there is no showing by appellant that proper medical attention was being given the child. There was also testimony by babysitters that no baby food could be found in the house, that the infant was fed common dairy milk, and that the child was not kept clean. Appellant failed to sufficiently refute this evidence as well. The record in this case is pregnant with evidence that, in every particular, Nolan Eugene Eaglen did not receive proper care or feeding from either of his parents, and that as a result of such lack of care and feeding the undernourished child contracted pneumonia and died.

If the totality of circumstances hereinbefore set out do not constitute a violation of Indiana's child neglect statutes, §§ 10-813—10-815, *supra*, then those statutes would appear to be impossible of violation.

Nor does it avail appellant to contend that he did not know,

or could not tell, that Nolan was sick. The most cursory examination by an experienced parent would have revealed the sickly condition of the child; and if appellant failed to observe the obvious, it could only have resulted from his own negligence.

In the 1914 English case of *Oakey* v. *Jackson* (1914), 1 KB (Eng.) 216, 6 BRC 460, Anno. Cas. 1916A335, the King's Bench Division, in construing the meaning of the word "neglect" in a statute similar in import to § 10-813, *supra,* stated that:

> "Neglect is the want of reasonable care—that is, the omission of such steps as a reasonable parent would take, such as are usually taken in the ordinary experience of mankind . . ."

This language is equally applicable to this State's statutory definition of child neglect. Therefore, conceding, without deciding, that appellant had no actual knowledge that his child was extremely ill, since he could easily have become aware of that fact had he exercised his statutory duty, such a contention provides appellant no defense.

We deem it the duty of this Court to enforce the minimum standards of parental knowledge and conduct clearly and definitely delineated by our child-neglect statutes. §§ 10-813—10-815, *supra.* In an attempt to justify his own conduct, the appellant urges upon this Court the criminal neglect of the child's mother, appellant's convicted co-defendant. But the criminal neglect of one parent is no excuse for the criminal neglect of the other. Such a result would be contrary to every conceivable social policy tending to protect the well-being of helpless infants. If anything, one parent's duty to look after his children increases when the other is guilty of neglect. Therefore, it comes with an ill grace when appellant attempts to interpose the criminality of his wife as a defense to his own criminal neglect. Such a theory is inconsistent with the purpose of the relevant statutes, and is re-

jected by this Court as a poorly conceived notion of the law. Sections 10-813 to 10-815, *supra,* draw no distinction between the responsibilities of the father and the responsibilities of the mother, and we do not intend to judicially create such a distinction without sound reason.

For all of the foregoing reasons, we find no error and, therefore, the judgment of conviction in this case should be affirmed.

Judgment affirmed.

Arterburn and Lewis, JJ., Concur.

Mote, J., concurs in result.

Jackson, J., dissents with opinion.

## DISSENTING OPINION

JACKSON, J.—I am not able to concur in the majority opinion and dissent thereto.

I am of the opinion the appellant's motion for new trial should have been sustained. There was, in my opinion a failure on the part of the State to prove the guilt of the defendant beyond a reasonable doubt.

Not one of the baby-sitters called the condition of the baby to the attention of either the appellant or his wife. The mother of one of the sitters was the wife of a policeman and was called by her daughter to examine the child, but she neither directed the attention of appellant, his wife, nor any social agency of the city to the condition of the child or the house.

It seems to me appellant is being punished for the twin offenses of being poor and ignorant. Admittedly the conditions of the child and the home in which it died were far different than would obtain in the case of a more affluent or sophisticated person. That does not mean, however, that appellant was guilty of the criminal offense charged.

The motion for new trial should have been sustained.

NOTE.—Reported in 231 N. E. 2d 147.