Lawanna SMITH, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 2–580A119.

Court of Appeals of Indiana,
First District.

Aug. 19, 1980.

Dwight F. Ritter, Indianapolis, for defendant-appellant.

Theodore L. Sendak, Atty. Gen., Michael Gene Worden, Asst. Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendant Lawanna Smith appeals her convictions of the offenses of neglect of a dependent, a class D felony, Ind.Code 35–46–1–4 (Supp.1979), and involuntary manslaughter, a class C felony, Ind.Code 35–42–1–4 (Supp.1979), which were entered upon guilty verdicts returned by a jury on the two charges. Thereupon, she was sentenced to imprisonment for terms of four years and eight years, respectively, the sentences to be served concurrently.

We affirm but remand for vacation of the four-year sentence.

### ISSUES

Defendant assigns four alleged errors for our review which we will consider in the following order:

I. Whether the trial court erred in overruling Defendant's motion for judgment on the evidence where the State failed to present any evidence as to venue.

II. Whether the trial court erred in overruling Defendant's motion to sequester the jury.

III. Whether the trial court erred in precluding the Defendant from presenting a defense to the crimes with which she was charged.

IV. Whether the trial court erred in overruling Defendant's motion for judgment on the evidence when there was insufficient evidence to prove any criminal intent or to prove that any acts of the Defendant proximately caused the death of the victim.

## STATEMENT OF THE FACTS

The evidence most favorable to the State reveals the following: On February 19, 1978, Defendant resided in an apartment in Indianapolis with her son, Eric, and her boyfriend, Lawrence Burkhalter. Eric was four years old; Burkhalter was 29 years old and unemployed. At about 11:00 that morning, Defendant was showing Eric a book and attempting to have Eric spell the word "butterfly," but he was having some trouble doing so correctly. Burkhalter, who was listening from another room, entered the room and demanded that Eric spell the word. When Eric could not spell it correctly, Burkhalter took the child into the bathroom, filled the tub with water, and ordered Eric to undress and get in the tub. Burkhalter repeatedly dunked Eric's head under the water while urging him to correctly spell the word. Burkhalter then warned Eric that if he did not spell the word correctly, he would take off his own clothes, get in the tub, and sit on Eric. Eric still failed. Burkhalter took off his pants and entered the tub, placing his knee upon Eric's stomach. Eric was on his back in the tub. Burkhalter persisted in his dunking of Eric, and Eric resisted, trying to get out. At one point Eric slipped and bumped his head on the tub. Defendant witnessed this entire episode, but did nothing to protect Eric or restrain Burkhalter, except to ask Burkhalter on several occasions to stop. Finally, Eric spelled the word correctly, and Defendant removed him from the tub. She dried him and helped him dress.

Burkhalter then kicked Eric, knocking him to the floor, and repeatedly kicked and struck him all over his body. Eric would stand up and Burkhalter would strike him down again. This happened repeatedly. Burkhalter also struck Eric on the face. Defendant also witnessed this abuse, protesting verbally several times but failing to intercede in any other manner.

Finally, Eric was unable to stand on his own. Burkhalter and Defendant helped Eric to his feet several times. Eric could walk, but with much difficulty. The episode lasted until approximately 2:00 p. m.

Eric was put to bed at 8:00 p. m. and had difficulty going to sleep. Defendant went to work at 10:00 p. m. At about 11:00 p. m., Eric complained of pain and Burkhalter gave him aspirin. At about 1:00 a. m., Burkhalter went to Defendant's place of employment and notified her that Eric was sick. Defendant left work and returned home. Eric was having trouble breathing and his eyes were red. He was unconscious.

The day after the beating, doctors performed abdominal surgery, a tracheotomy, and brain surgery. The latter procedure required the removal of a large portion of Eric's skull. Eric underwent additional surgery on March 17 and May 2 to relieve complications resulting from the collection of fluids on his brain.

Eric was found dead in his hospital bed on May 26. An autopsy performed by a forensic pathologist disclosed that Eric's death was caused by complications developing from a blood clot which had resulted from a blunt trauma to the head.

Burkhalter had punished Eric on occasions prior to February 19, 1978, in the presence of Defendant, whipping the lad with a belt and often causing bruises.

Burkhalter was convicted in a separate trial of neglect of a dependent, battery, and murder.[1]

## DISCUSSION AND DECISION

*Issue I.*

Defendant first alleges that the trial court erred in denying her motion for judgment on the evidence since the State allegedly failed to establish that the offense took place in Marion County. Defendant asserts the venue issue for the first time on appeal, having neglected to bring the issue to the attention of the trial court either in her motion for judgment on the evidence or her motion to correct errors. Inasmuch as this asserted error questions the sufficiency of the evidence, it falls within an exception to the former Ind. Rules of Procedure, Trial Rule 59(G) in effect at the time of Defendant's trial. Otherwise, Defendant's failure to raise the issue at the trial level would have precluded our consideration of the issue.[2] *Guardiola v. State*, (1978) Ind., 375 N.E.2d 1105.

■ Venue is not an essential element of the offense. As such, the State sustains its burden by proving venue by a preponderance of the evidence. *Sizemore v. State*, (1979) Ind., 395 N.E.2d 783. In *Sizemore*, the court stated, at 787:

"[I]f the facts and circumstances are of a character to permit the jury to infer that the crime occurred in a given county, such a finding will not be disturbed on appeal."

In determining the question of sufficiency of evidence as to venue, every intendment will be made in favor of the trial court. *Neblett v. State*, (1979) Ind.App., 396 N.E.2d 930; *Williams v. State*, (1978) Ind. App., 383 N.E.2d 416.

■ In the case at bar, there was evidence that Defendant resided at 310 West New York Street, across the street from the

State Office Building where she worked. Officer Jerry Barker, who investigated the case, testified that he was a police officer for the City of Indianapolis. Carolyn Walsh, a caseworker with the Marion County Department of Public Welfare, testified that she made a home visit to Defendant at her residence at 310 West New York Street where Defendant testified that the beating occurred.

There was thus sufficient evidence from which a jury could infer that the offense took place in Marion County. *See Neblett, supra.*

*Issue II.*

■ Defendant claims that the trial court erred in overruling her motion to sequester the jury. Defendant has waived her right to assert this alleged error on appeal, however. Since she neglected to include it in her motion to correct errors, she may not argue it for the first time on appeal. *Guardiola, supra; Spivey v. State*, (1971) 257 Ind. 257, 274 N.E.2d 227. The exception to this rule of waiver concerning claims of insufficiency of the evidence is clearly inapposite here.

■ Defendant's waiver of the issue notwithstanding, there is no merit to her argument. The decision whether to sequester a jury during trial is a determination to be made by the trial judge in the exercise of his sound ·discretion. *Vaughn v. State*, (1978) Ind., 378 N.E.2d 859. It follows that Defendant must demonstrate an abuse of that discretion in order to obtain a reversal of her conviction on that ground. She has made no such showing. While it appears from the record of the voir dire proceedings that some prospective jurors were aware of the case, had formed opinions thereon, and were for that reason excused, Defendant has not shown that any jurors were exposed to any prejudicial publicity during the trial. *Owen v. State*, (1978) Ind., 381 N.E.2d 1235; *Vaughn, supra.* Further, the trial court

---

1. The Supreme Court of Indiana affirmed the convictions. *Burkhalter v. State*, (1979) Ind., 397 N.E.2d 596.

2. Former T.R. 59(G) stated in pertinent part: "Issues which could be raised upon a motion to correct errors may be considered upon appeal only when included in the motion to correct errors filed with the trial court."

properly admonished the jury prior to each recess. We see no prejudice suffered by Defendant nor any abuse of discretion by the trial court.

*Issue III.*

Defendant sought to present evidence that her personality was meek, timid, and dependent. The State filed a motion *in limine* to exclude any evidence that Defendant had a "passive or dependent" personality and the trial court granted the motion.

On appeal, Defendant asserts error in the granting of the motion, claiming she had a right to present such evidence as matters constituting the defense of diminished capacity which, she argues, would have operated to exonerate her or mitigate her guilt. Defendant acknowledges that insanity was not at issue. She contends, however, that certain mental conditions may exist, short of statutory insanity, which render the afflicted individual incapable of forming the requisite criminal intent for culpability. The State maintains that the evidence was not relevant and would not have established a defense. We agree.

In support of her position, Defendant cites *Gunn v. State* (1977) Ind.App., 365 N.E.2d 1234. That case is distinguishable from the case at bar and inapposite. In *Gunn*, the appellant's conviction of involuntary manslaughter was reversed because the trial court refused to allow the appellant to put forth certain evidence of self-defense. That defense was, in the trial court's view, inconsistent with the defense of accident, which the appellant had also asserted. The appellate court found the two theories to be not inconsistent as a matter of law. In the case *sub judice*, the defendant apparently cites *Gunn* as authority for the erroneous proposition that an accused may present any defense whatever, irrespective of its relevance or applicability to the facts at hand.

The offenses with which the defendant was charged are defined in pertinent part as follows:

"Neglect of a dependent

. . . (a) A person having the care, custody, or control of a dependent who knowingly or intentionally:

(1) Places the dependent in a situation that may endanger his life or health;

\* \* \* \* \* \*

commits neglect of a dependent, a Class D felony."

Ind.Code 35–46–1–4 (Supp.1979).

"Involuntary manslaughter

. . . A person who kills another human being while committing or attempting to commit:

(1) A Class C or Class D felony that inherently poses a risk of serious bodily injury;

\* \* \* \* \* \*

commits involuntary manslaughter, a Class C felony."

Ind.Code 35–42–1–4 (Supp.1979).

Thus, for culpability to be present, the defendant must have been found to have placed Eric in a dangerous situation either knowingly or intentionally.

These terms are defined by Ind.Code 35–41–2–2 (Supp.1979):

"(a) A person engaged in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."

We do not see that the qualities of meekness, timidity, or dependence could possibly have negated Defendant's awareness of the dangerousness of the situation in which she was found to have placed Eric. Such a contention is little more than a sociological argument, in vogue in some circles, which would relieve a person from any responsibility for his own acts. The defendant has cited no authority recognizing this personality trait as a defense. It may be a proper consideration for the court to consider in sentencing a person convicted of a crime, but it is not relevant to the factual determinations to be made by the jury in this case.

The admission of testimony is within the discretion of the trial court, and a trial judge has wide latitude in ruling on the relevancy of evidence. *Williams v. State*, (1979) Ind., 387 N.E.2d 1317. Evidence is generally admissible if it is relevant to the issue being tried. *Simpson v. State*, (1978) Ind., 381 N.E.2d 1229. Evidence is relevant if it logically tends to prove a material fact. *Minton v. State*, (1978) Ind., 378 N.E.2d 639; *Walker v. State*, (1976) 265 Ind. 8, 349 N.E.2d 161.

We, therefore, do not accept the Defendant's position that some type of "diminished capacity" defense was available under the facts of this case and the charges she was defending. Defendant claims that this issue is relevant to the issue of intent. We discuss intent in Issue IV, *infra*.

*Issue IV.*

Defendant contends that the trial court erred in denying her motion for judgment on the evidence alleging that the State failed to prove (a) criminal intent, and (b) that any acts of Defendant proximately caused the death of Eric Smith.

A motion for judgment on the evidence can only be granted in instances where there is a total lack of evidence on some essential issue or where there is no conflict in the evidence and it is susceptible only to an inference in favor of the defendant. *Burkhalter v. State*, (1979) Ind., 397 N.E.2d 596. Defendant essentially is challenging the sufficiency of the evidence and we shall consider her claim as such.

When reviewing for the sufficiency of the evidence, this court will neither weigh the evidence nor determine the credibility of witnesses. If, upon review, we find there to have been substantial evidence of probative value sufficient to establish every material element of an offense beyond a reasonable doubt, we will not disturb the verdict. *Luckett v. State*, (1972) 259 Ind. 174, 284 N.E.2d 738. We consider only the evidence most favorable to the State, along with all reasonable inferences to be derived therefrom. *Jones v. State*, (1978) Ind., 377 N.E.2d 1349; *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509.

We first dispose of a minor point. Defendant argues on appeal that the statement she gave to the police, which contained evidence of her knowledge of the situation, was erroneously admitted into evidence because the State failed to adduce sufficient evidence of the *corpus delicti* of the crime independent of the statement. Defendant failed to assert this alleged error at trial and has waived her right to raise it on appeal. T.R. 59(G), *supra; Guardiola, supra.* Nevertheless, we note that the argument is without merit.

Either before or after an accused's extrajudicial statement is admitted, the *corpus delicti* must be proved, i. e. there must be evidence independent of the statement to establish that the specific crime charged in the indictment or information was committed by someone at the time and place alleged. The *corpus delicti* may be established by circumstantial evidence, and does not need to be proven beyond a reasonable doubt. *Perkins v. State*, (1979) Ind.App., 392 N.E.2d 490.

Defendant knew of the nature of the situation in which she placed Eric and allowed him to remain, as set forth in the statement of facts. This is sufficient to establish the *corpus delicti* of the crime of neglect of a dependent.

Defendant claims that the State failed to prove criminal intent or mens rea. The underlying class D felony supporting the charge of involuntary manslaughter is Ind. Code 35–46–1–4 which in pertinent part is as follows:

"(a) A person having the care, custody, or control of a dependent who knowingly or intentionally:

(1) Places the dependent in a situation that may endanger his life or health;

\*   \*   \*   \*   \*   \*

commits neglect of a dependent, a Class D felony."

However, in *Hunter v. State*, (1977), Ind. App., 360 N.E.2d 588, a child abuse case, this court said at 604:

"...    *Eaglen v. State*, (1967) 249 Ind. 144, 231 N.E.2d 147, in effect re-

moves the requirement of intent from the cruelty to a child statute by holding that entrusting the care of one's child to another does not relieve the parents [sic] of the duty to care for his child. Thus the parent need not have the specific intent to commit the act, but merely allowing the act to be committed will support a conviction of cruelty to a child."

This case was decided under the cruelty to a child statutes existing prior to October 1, 1977, which are discussed under *Eaglen v. State*, (1967) 249 Ind. 144, 231 N.E.2d 147.

The duties of a parent were discussed in depth by Justice Hunter in the case of *Eaglen, supra.* There the defendant, the victim's father, was convicted of involuntary manslaughter based on the underlying offense of neglect. The victim died of pneumonia secondary to malnutrition. The involuntary manslaughter statute then in force provided as follows:

"Whoever . . . kills any human being without malice, expressed or implied, . . . involuntarily in the commission of some unlawful act, is guilty of manslaughter, . . ."

Ind.Anno.Stat. § 10–3405 (1956). The unlawful act, as charged, was neglect, which was defined under the statute in force at that time:

"(a) wilfully failing to provide proper and sufficient food, clothing, maintenance, regular school education as required by law, medical attention or surgical treatment, and a clean and proper home, or (b) failure to do or permit to be done any act necessary for the child's physical or moral well-being: . . ."

Ind.Anno.Stat. § 10–813 (1956).

The defendant in *Eaglen* argued that he had not overtly done anything to cause the child's death and that he had fulfilled his duty by furnishing sufficient money for the support of the child. He further attempted, unsuccessfully, to assert the negligence of the victim's mother. The court held, in interpreting the statutes and case law, that a parent is charged with an *affirmative duty* to care for his child. The court there further incorporated into our law the language from *Oakey v. Jackson*, (1914), 1 KB (Eng.) 216, 6 BRC 460, Ann.Cas. 196A 335, defining parental neglect:

"Neglect is the want of reasonable care—that is, the omission of such steps as a reasonable parent would take, such as are usually taken in the ordinary experience of mankind. . . ."

The court held that the absence of actual knowledge is no defense because the parent had an affirmative duty to discover and act in a reasonable manner. Dereliction of that duty is neglect. The case mandated the courts to enforce *minimum standards of care.*

The words "knowingly" or "intentionally", as contained in Ind.Code 35–46–1–4, can scarcely have their usual application in a situation, as here, or in *Eaglen*, where the offense grows out of the nonperformance of an affirmative duty imposed by law for the care and protection of a child. The insertion in the statute of the words "knowingly" or "intentionally" require the State only to prove that the defendant parent was aware of facts that would alert a reasonable parent under the circumstances to take affirmative action to protect the child. It is within the legitimate province of the trier to infer from the totality of the circumstances whether or not the requisite awareness was present, and whether or not the action of the parent was reasonable. *Perkins, supra.*

We are of the opinion that there is little essential difference in the expressed purpose of child protection between Ind.Anno. Stat. § 10–3405 (1956) and Ind.Anno.Stat. § 10–813 (1956), the neglect and involuntary manslaughter statutes in *Eaglen, supra*, and the present statutes, Ind.Code 35–46–1–4 and Ind.Code 35–42–1–4, under which the defendant was tried. The affirmative duty of a parent to care for and protect his child, the rationale therefor, and the standard of care imposed thereby as expressed in *Eaglen* and *Hunter*, are equally applicable to the present statutes. *Eaglen* further held that child neglect resulting in death is a killing within the ambit of involuntary manslaughter.

Defendant's arguments that she committed no act resulting in Eric's death,

either intentionally or negligently, will not avail her under the authority of *Eaglen*. Defendant's position as a parent is not one of benign neutrality. She had an affirmative duty to care for and protect her child. The standard of care is what a reasonable parent would do or not do under the circumstances. She had a duty to not place the child in a situation that may endanger its life or health, and she further had a duty to remove the child from any situation of danger.

■ Here the defendant moved in with and exposed the child to a live-in boyfriend. Prior to the events causing death, Burkhalter had exhibited a violent nature on occasions by whipping the four-year-old Eric with a belt, leaving bruises. Defendant witnessed the brutal events of February 19, 1978, as set forth in the statement of facts, and did nothing. Thereafter, she, without seeking help, medical or otherwise, went off to work, leaving Eric in the care of Burkhalter. The jury was entitled to infer from the circumstances awareness on her part of the danger. Further the jury was entitled to conclude that her conduct amounted to neglect as defined in Ind.Code 35–46–1–4 and *Eaglen*. Insomuch as death ensued as a result of the neglect, a class D felony that inherently posed a risk of serious bodily injury, the evidence was sufficient to support the conviction of involuntary manslaughter under Ind.Code 35–42–1–4.

■ We raise an error *sua sponte* that we consider fundamental, although it was not raised by the defendant. It was improper to impose a sentence upon the verdict of guilty on the charge of neglect of a dependent when a sentence was imposed for the greater offense of involuntary manslaughter. The Indiana Supreme Court has refused to allow sentences to be imposed separately for felony murder and the underlying offense that gave rise to the felony murder. *Williams v. State*, (1978) 267 Ind. 700, 373 N.E.2d 142; *Candler v. State*, (1977) 266 Ind. 440, 363 N.E.2d 1233. *See also Harris v. Oklahoma*, (1977) 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054. Where, as here, conviction of the greater crime, involuntary manslaughter, cannot be had without conviction of the lesser crime, ne-

glect of a dependent, the double jeopardy clause of the Fifth Amendment to the United States Constitution bars separate sentencing upon the lesser crime when sentencing is imposed upon the greater one.

We therefore remand this cause to the trial court with instructions to vacate the sentence imposed upon the defendant's conviction of the offense of neglect of a dependent. This cause is in all other respects affirmed.

Affirmed in part, reversed and remanded in part.

ROBERTSON, P. J., and RATLIFF, J., concur.