**Daniel W. WHITE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 82S00–8812–CR–1020.**

Supreme Court of Indiana.

Dec. 15, 1989.

David W. Lamont, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of two counts of Neglect of a Dependent, a Class D felony, for which he received concurrent sentences of two (2) years and two (2) years enhanced by ten (10) years by reason of a finding of habitual offender status.

The facts are: During the months of November and December of 1987, ten-year-old D.W., appellant's daughter, observed her father at home on one or two occasions mash up a white powder and inject it into his arm. D.W.'s mother told her the powder was "speed." On various occasions, D.W. and her friends found marijuana and intravenous drug paraphernalia around the home where D.W. lived with her parents.

D.W. and some of her friends repeatedly observed both of D.W.'s parents smoking marijuana. On three occasions, D.W.'s parents invited her to try smoking it with them and she accepted. One of D.W.'s friends told her father about the substance abuse incidents in D.W.'s home. The father then told the children's elementary school principal, who in turn reported the matter to the Evansville Police Department. It then was referred to the Vanderburgh County Child Protection Services; that agency removed D.W. from the home. The ensuing investigation of appellant and his wife culminated in the filing of the instant charges.

Appellant contends the trial court erred in denying his motion for mistrial based upon the court's "lengthy" interrogation of D.W. conducted out of the jury's presence. Prior to the testimony of D.W., who was the State's key witness, appellant's wife, who was also his codefendant, moved to exclude D.W.'s testimony based upon her alleged incompetency to identify as drugs certain substances she had seen. The jury was excused, and the attorneys for both defendants, the prosecutor, and the trial court each questioned D.W. regarding her ability to recognize drugs. The court found D.W. competent to testify as to what she had seen. Both defendants then moved for mistrial based upon "the Court's lengthy interrogation of the witness." The motion was denied.

Appellant argues the trial court's "extensive" questioning of D.W. improperly prepared her for testifying before the jury and thus denied him a fair trial before an impartial judge, citing *Kennedy v. State* (1972), 258 Ind. 211, 280 N.E.2d 611. However, *Kennedy* is not applicable to the facts at hand, for there the trial court virtually impeached a psychiatric expert witness before the jury, while here the court intervened to aid counsel for both sides during their *voir dire* of a child witness outside the jury's presence, so as to be more able to rule on the pending motion to exclude her testimony.

Moreover, it is entirely proper for the trial court to intervene in the fact-finding process in order to promote clarity. *Rowe v. State* (1989), Ind., 539 N.E.2d 474. Such intervention seems particularly appropriate where the court is the ultimate arbiter of the fact at issue, as here regarding the competency of the child witness, D.W. Further, appellant has not specified in what particular manner either the witness or the prosecutor was unfairly aided by the court's questioning such that they were better prepared for her testimony in front of the jury. Appellant has failed to demonstrate that he was placed in a position of grave peril establishing abuse of the trial court's discretion in denying his motion for mistrial. *Johansen v. State* (1986), Ind., 499 N.E.2d 1128.

The trial court did not err in denying appellant's motion for mistrial.

▮Appellant contends the trial court erred in denying his motion to strike as unresponsive an answer given by State's witness Gerald Flick, supervisor of Vanderburgh County Child Protection Services. During cross-examination by counsel for appellant's codefendant, the following colloquy took place:

"Q. Now, would it make a difference to you in your capacity if the individual that you thought was 'using heavy drugs or a heavy drug user' used those drugs in the confines of his own private room and ordered or told the child to leave the room when he or she was using the drugs? Would that make a difference?

A. I think if that child has knowledge that those drugs are being used—

Q. Answer my question.

A. I am.

[Court rules the witness may finish his answer.]

A. I think in the process of a person using drugs and a child has access to that room and that child is exposed to that drug usage, that is detrimental to that well-being of that child, yes, sir."

Appellant argues that the witness' inclusion in his answer of the words, "and a child has access to that room," assumed facts favoring the State's case and which were not included in defense counsel's hypothetical question. Appellant thus reasons the answer was unresponsive. ·

However, appellant cites no authority in support of his contention. As the State maintains, it thus is waived. Ind.R.App.P. 8.3(A)(7); *Whitehead v. State* (1987), Ind., 511 N.E.2d 284, *cert. denied,* 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773.

▮ The State alternatively argues, citing *Heinrich v. Ellis* (1943), 113 Ind.App. 478, 48 N.E.2d 96, that only the party asking the question has standing to object to an unresponsive answer; and because counsel for appellant's codefendant asked the question at issue here, appellant had no ground for joining in his codefendant's motion to strike, and consequently has no merit to his argument on appeal. It is true that Indiana caselaw, including *McCord v. Strader* (1949), 227 Ind. 389, 86 N.E.2d 441, and *Northern Indiana Public Service Co. v. Otis* (1969), 145 Ind.App. 159, 250 N.E.2d 378, hold that only the examining party, and not the antagonist, is entitled to have testimony stricken on the sole basis of unresponsiveness. However, it seems axiomatic that a criminal defendant's Sixth Amendment right to confront the witnesses against him would entitle him to object to unresponsive answers elicited inadvertently by counsel for a codefendant in a joint trial where, as here, testimony by the State's witness bears equally against defendant and codefendant, regardless of whose counsel has elicited the response in question.

▮ Even aside from the waiver, however, we need not resolve this question at this time. Trial court error is not reversible absent an affirmative showing of prejudice to the appellant's substantial rights. *Sharp v. State* (1989), Ind., 534 N.E.2d 708. Assuming for the sake of argument that the answer was unresponsive and that appellant had standing to object to it, he still has failed to demonstrate how the court's refusal to strike it has prejudiced him to an extent requiring reversal. Consequently, no reversible error has been shown to result from the court's denial of the motion to strike Mr. Flick's answer.

▮ Appellant contends the trial court erred in overruling his objection to the court's Final Instruction No. 4. He argues the last paragraph of Instruction No. 4 was confusing, was an inaccurate statement of the law, and was covered by a portion of Final Instruction No. 19, with which No. 4 conflicted to some degree due to its alleged inaccuracy. The relevant portions of each instruction are as follows.

"No. 4: If the evidence against a Defendant is so conclusive as to overcome the presumption of innocence, beyond a reasonable doubt, then this presump-

tion of innocence will afford nothing to that Defendant."

"No. 19: If, on the other hand, one of the [two] possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable bearing in mind, however, that even if the reasonable deduction points to the Defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt."

Appellant argues that No. 4's wording, "so conclusive as to overcome the presumption of innocence, beyond a reasonable doubt," is confusing, incorrect and in conflict with No. 19's wording, "the entire proof must carry the convincing force required by law to support a verdict of guilt."

■ His assertion of the applicable standard, taken from *Williams v. State* (1979), 271 Ind. 656, 395 N.E.2d 239, that a jury instruction must correctly state the law, be supported by the evidence, and not be covered by the other instructions given, is the standard to be used in determining whether a tendered instruction has been refused erroneously. When, as here, the issue is whether an instruction has been given erroneously, the standard on review is whether the alleged erroneous instruction so affects the entire charge that the jury was misled as to the law in the case; if so, reversal is required. *Hodges v. State* (1988), Ind., 524 N.E.2d 774.

In the case at bar, we see no error in the law given in Instruction No. 4, nor do we see how it conflicts with Instruction No. 19. In fact, the contested portion of No. 4 serves to define the "convincing force required by law to support a verdict of guilt" language used in No. 19.

Giving the Court's Final Instruction No. 4 to the jury was not error.

■ Appellant contends the trial court erred in overruling his objection to the court's Final Instruction No. 7, which instructed the jury as to the statutory elements of the crime of neglect of a dependent. He argues that defining the offense by its statutory terms alone, *i.e.*, one commits that offense who, having care of a dependent, knowingly or intentionally "places the dependent in a situation that may endanger his life or health," Ind.Code § 35–46–1–4(a)(1), erroneously provided the jury with a lesser standard of harm than is required by our decision in *State v. Downey* (1985), Ind., 476 N.E.2d 121.

In *Downey*, we construed the statute's "may endanger" language to require, for conviction, proof of the dependent's exposure to "a danger which is actual and appreciable." *Id.* at 123. Standing alone, then, Instruction No. 7 indeed would allow a jury to convict upon a less definite degree of proof than we have held necessary to avoid vagueness running afoul of "minimal due process requirements." *Id.* at 123.

■ However, as pointed out by the State, the court's Final Instructions Nos. 8 and 10 each instructed the jury that among the elements necessary to convict appellant of the crime of neglect of a dependent, the State must prove that D.W. was placed in "a situation that actually and appreciable endangered the life or health of said child." Jury instructions must be construed as a whole, and if when so considered, they state the law fully and correctly, they are not erroneous. *Wilson v. State* (1989), Ind., 533 N.E.2d 114.

Here, when read in conjunction with Instructions Nos. 8 and 10, Instruction No. 7 was not erroneous.

Appellant next contends the evidence was insufficient to support his convictions of neglect of a dependent and that the trial court erred in denying his motions for judgment on the evidence made at the conclusion of the State's case and at the close of all the evidence. He argues that "there is absolutely no evidence" that the health and life of his daughter were "actually and appreciably endangered" as per the requirements set forth in *Downey, supra.*

Appellant here was charged with having neglected D.W. in Count I by having placed her in an environment of frequent drug

use, and in Count III by having provided her with marijuana and smoking it with her. He now argues that the mere facts that D.W. observed him smoking marijuana, observed him intravenously injecting a white substance, and found hypodermic needles stashed in the kitchen do not show, in light of his alleged admonishments to D.W. to leave the room whenever he was engaged in using drugs, any "actual and appreciable danger" to D.W. (Appellant here seems not to contest the patent danger in offering a marijuana cigarette to one's own ten-year-old child.)

At trial, the State presented Gerald Flick's expert testimony as evidence that a child's exposure to an environment of illegal drug use constitutes an actual and appreciable danger by causing the drug-using parent to neglect that child's physical well-being. In addition, the State argues in its brief that "[s]ince these substances are illegal due to their harmful effects and consequences, Defendant's knowing exposure of [D.W.] to these illegal substances *per se* actually appreciably endangered [D.W.'s] life or health."

■ We conclude that the State's assertion is correct: that the knowing exposure of a dependent to an environment of illegal drug use poses an actual and appreciable danger to that dependent and thereby constitutes neglect regarding the endangerment requirement of the offense. We have stated previously that in the context of care of a dependent, "[n]eglect is the want of reasonable care—that is, the omission of such steps as a reasonable parent would take, such as are usually taken in the ordinary experience of mankind...." *Eaglen v. State* (1967), 249 Ind. 144, 150, 231 N.E.2d 147, 150. Certainly the fact that children will adopt their parents' behavior, even when, or perhaps especially when, their parents tell them not to, is an observation coming within the "ordinary experience of mankind," *id.*

The facts most favorable to the verdict in the case at bar clearly demonstrate that D.W. was placed in a situation where the danger inherent from appellant's use of illegal drugs was "actual and appreciable"

as required to support a conviction by our decision in *Downey*. The evidence therefore was sufficient to support appellant's conviction of the charges of neglect of a dependent.

■ Appellant contends the trial court erred during the habitual offender phase by admitting in evidence, over his objection, State's Exhibit No. 1, which consisted of copies of records of the District Court of Harris County, Texas. Said records were certified by the records clerk of the Texas Department of Corrections in Walker County, Texas and by the Walker County Court Judge and Clerk, respectively.

Appellant argues that because the original judgments of his prior Texas convictions had to be maintained by the court clerk in Harris County, the Walker County Clerk improperly certified the documents comprising State's Exhibit No. 1. Appellant thus reasons that because Ind.R.Tr.P. 44(A)(1) provides for the admission of official records, or copies thereof, attested by the officer having legal custody of that record, the copies of the Texas judgments were improperly authenticated and consequently improperly admitted in evidence.

However, as the State points out, the documents comprising Exhibit No. 1 were actually copies of records from the Texas Department of Corrections; that is, they were not court records maintained by a county court clerk, but were prison records maintained on a state level by the Texas Department of Corrections. The records therefore were certified by their legal custodian and thus were properly authenticated. Certified copies of prison records are properly admissible as public records and may be used to establish the fact of prior felony convictions. *Wilson v. State* (1987), Ind., 513 N.E.2d 653.

The trial court did not err in admitting State's Exhibit No. 1 in evidence.

■ Appellant contends the trial court erred in overruling his objection to the qualification of Alberta Tolliver, an employee of the Evansville Police Department, as an expert witness on the subject of fingerprint comparison. She testified at

the habitual phase to the effect that the fingerprints on State's Exhibits Nos. 1 and 7 were from the same person, thus connecting appellant to a prior felony conviction. Appellant argues that Ms. Tolliver's two weeks of formal instruction at the F.B.I. Academy, along with her service as a fingerprint file clerk for the Evansville Police Department, were insufficient to qualify her as an expert witness in the field of fingerprint identification and comparison.

To testify as an expert, however, a witness need demonstrate no precise quantum of knowledge; all that is required is a showing of sufficient skill, knowledge or experience in the field to allow the trial court to find that the witness' opinion or inference will aid the trier of fact in the search for truth. *Fox v. State* (1987), Ind., 506 N.E.2d 1090. The trial court has broad discretion in determining the qualifications of an expert witness. This Court will reverse the determination below only for an abuse of discretion. *Id.*

In the case at bar, Ms. Tolliver testified that in addition to completion of the F.B.I.'s basic and advanced fingerprint schools, she had worked daily under her department's fingerprint expert for nearly a year, had performed hundreds of fingerprint classifications, and had testified in court on two prior occasions. A lack of extensive formal training or experience goes to the weight of the expert testimony rather than to its admissibility. *Id.* We thus find no abuse of discretion in allowing Ms. Tolliver to testify as a fingerprint expert; the trial court did not err in admitting her testimony.

▬ Appellant contends the trial court erred in overruling his objection to the Court's Final Instruction No. 8 given during the habitual offender phase. This instruction informed the jury that the crimes of voluntary manslaughter and theft are felonies under Indiana law.

Appellant takes the position that because the State had the burden of proving that he had accumulated convictions for two prior unrelated felonies, instructing the jury that the prior convictions were felonies improp-

erly invaded the province of the jury under Art. 1, § 19 of the Indiana Constitution.

However, it is now well settled that whether an offense is a felony is not a jury question, but is purely a matter of legislative categorization. *Lee v. State* (1988), Ind., 531 N.E.2d 1165. It is proper for the trial court to take judicial notice of criminal statutes and instruct the jury accordingly. *Pike v. State* (1989), Ind., 532 N.E.2d 3.

The trial court did not err in overruling appellant's objection to Final Instruction No. 8.

Appellant contends the evidence presented during the habitual offender proceeding was insufficient to support the jury's finding. His argument, however, depends upon his previous contention that the documents pertaining to his Texas convictions were improperly authenticated and thus erroneously admitted. Because we have found otherwise, we accordingly conclude the evidence is sufficient to support the finding of appellant's habitual offender status.

The trial court is affirmed.

PIVARNIK and DICKSON, JJ., concur.

SHEPARD, C.J., concurs in affirming Count II, but joins Justice DeBRULER'S dissent with respect to Count I.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

Appellant and his wife, being father and mother of Danielle, age ten years, were charged pursuant to I.C. 35-46-1-4 in two counts with placing Danielle in a situation that endangered her life and health. In Count I, it was charged that they did place her "in an environment of frequent drug use." In Count II, it was charged that they did place her in a situation that endangered her life and health by providing her with marijuana and smoking marijuana with her.

The daughter testified that she loved her parents and that they loved her. She also

testified in support of the charges that her parents smoked marijuana sometimes, but not all the time. She described them as not getting "really real high where they acted real crazy, and that they usually acted normal." She testified further that on two or three occasions, her parents asked her if she wanted to try a marijuana cigarette, that she said yes, and that she was then permitted to do so. On the first occasion, she took only one puff, and on the later occasions, more than one. She stated that she did not notice anything happening to her after puffing the cigarette. There was no evidence presented that the active ingredient in marijuana is addictive or harmful to the health. Indeed, the welfare worker implied that it was not and that the danger to children from living where there is heavy addictive drug usage stems from the addiction of the parent and its consequent placing of self-interest over the interest of the dependent.

The daughter also testified that she saw her father inject himself once or twice with something white and that her mother said it was speed. He usually made her leave the room when getting ready to use the syringe. She saw her mother inject herself once at a friend's house while they were visiting to celebrate Thanksgiving. The daughter was never given any of the white substance and did not use the needles. There was actually insufficient evidence that the substance being injected by appellant and his wife was a narcotic drug or even a controlled stimulant, or that either of the parents was addicted. The father worked part-time as a house painter and the mother worked full-time in a barbecue restaurant. There was no evidence that either parent failed to provide the daughter with food, clothing, or shelter, or mistreated her in any way. There was no evidence that the parents' use of marijuana and needles brought the child into contact with violence or danger from non-family members using or trafficking in drugs. There was insufficient evidence that the use by the parents of marijuana, their injection of white material they called speed, and the experimentation by the daughter on two or three occasions was such as to create an actual and appreciable danger to the child's life or health as is essential to both Counts I and II. *State v. Downey* (1985), Ind., 476 N.E.2d 121.

I read the provision of the criminal statute pursuant to which these charges were brought as having as its goal the protection of the physical well-being of dependents and not their moral well-being. If there is a crime here by the parents, it was encouraging their daughter, a minor, to commit an act of delinquency in violation of I.C. 35–46–1–8. Because the State's proof is lacking, these convictions for endangering physical well-being should be reversed.

SHEPARD, C.J., joins as to Count I. I would affirm Count II.