David E. TINKHAM, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 01A04–0206–CR–255.

Court of Appeals of Indiana.

April 30, 2003.

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

---

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

David Tinkham appeals his convictions for child molesting as a Class A felony and child molesting as a Class C felony. We reverse.

### Issues

The dispositive issue is whether the trial court committed reversible error when instructing the jury. For purposes of retrial, we also address whether the trial court erred in admitting into evidence certain statements made by Tinkham's wife.

### Facts

The evidence most favorable to the convictions reveals that during the summer of 2001, M.B., who was born in 1992, was living with Tinkham and his wife, Kim. The Tinkahms were M.B.'s legal guardians and she had been living with the Tinkhams for several years.[1] M.B. called the Tinkhams "mom" and "dad."

In July 2001, M.B. indicated to her childcare provider that Tinkham had been molesting her. The childcare provider reported what M.B. had told her to the local Office of Family and Children and an investigation ensued. At some point during the investigation, M.B. told police that she had lied about the molestation, but later indicated she had recanted only after either her sister or Kim Tinkham had pressured her to so that Tinkham would not have to go to jail. M.B. testified that Tinkham at various times had licked her

---

1. The presentence investigation report indicates that M.B. was the daughter of Kim Tinkham's cousin, had lived with the Tink- hams since her birth, and the Tinkhams were appointed M.B.'s legal guardians in 1994.

"crotch," touched her "boobs," and forced her to "suck his dick and feel his balls." Tr. p. 335.

At trial, Tinkham argued that M.B. had lied about the molestation because she wanted to go live with Tinkham's daughter. He also presented evidence that M.B. had been present when Tinkham's and Kim's other children had engaged in explicit sexual talk, had walked in on Tinkham's son having sex with his girlfriend, and had watched sexually explicit R-rated movies when the Tinkhams were not home. The State also presented evidence that when Kim first encountered a case manager for the Office of Family and Children who was investigating M.B.'s allegations, she said, "I'm not going to throw away 19 years of marriage, you['re] not going to make me testify against my husband ... just take her [M.B.], she's not my f ... ing kid anyway." Tr. p. 380. The trial court instructed the jury, over objection, "You may convict the Defendant upon the uncorroborated testimony of a witness." App. p. 188. On February 27, 2002, a jury found Tinkham guilty as charged of one count of child molesting as a Class A felony and one count of child molesting as a Class C felony. After sentencing, Tinkham now appeals.

### Analysis

### I. Jury Instruction

■■■ Tinkham challenges the trial court's instruction to the jury that it could convict Tinkham "upon the uncorroborated testimony of a witness." App. p. 188. We review the grant of a jury instruction for abuse of discretion. *Hubbard v. State*, 742 N.E.2d 919, 921 (Ind.2001), *cert. denied*, 534 U.S. 869, 122 S.Ct. 160, 151 L.Ed.2d 109. An improper instruction will merit reversal only if it "so affects the entire charge that the jury was misled as to the law in the case." *Id.* (quoting *White v. State*, 547 N.E.2d 831, 835 (Ind.1989)). In

reviewing a challenge to a jury instruction, we consider whether the instruction correctly states the law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions. *Id.*

While this case was in the process of being fully briefed, our supreme court issued its decision in *Ludy v. State*, 784 N.E.2d 459 (Ind.2003). In that case, the court disapproved of a jury instruction stating, "A conviction may be based solely on the uncorroborated testimony of the alleged victim if such testimony establishes each element of any crime charged beyond a reasonable doubt." *Id.* at 460. In so doing, the court overruled a long line of cases that had approved similar jury instructions. *Id.* at 462 n. 2. The court identified three difficulties with the instruction:

> First, it unfairly focuses the jury's attention on and highlights a single witness's testimony. Second, it presents a concept used in appellate review that is irrelevant to a jury's function as a factfinder. Third, by using the technical term "uncorroborated," the instruction may mislead or confuse the jury.

*Id.* at 461. Nevertheless, the court found the giving of the instruction to be harmless error, because the testimony of the alleged victim was, in fact, corroborated, and there was substantial probative evidence of the defendant's guilt aside from the victim's testimony. *Id.* at 463.

It is true that the instruction given in this case is not identical to the one given in *Ludy*. Most notably, it refers to the uncorroborated testimony of a "witness" instead of the arguably more inflammatory "alleged victim." This is not, however, a sufficient basis to distinguish the instruction given to Tinkham's jury. We observe

that when Justice Dickson dissented from the denial of transfer in *Carie v. State*, he indicated that one of the reasons he disapproved of the instruction at issue in that case was because it referred to "the victim" and thus "implie[d] to the jury that the trial judge accepts as truthful the complaining witness's contentions regarding the alleged incident." 761 N.E.2d 385, 385 (Ind.2002) (Dickson, J., dissenting from denial of transfer). In *Ludy,* however, Justice Dickson made no mention of, and thus placed no importance on, the fact that the instruction referred to the "alleged victim" in disapproving of the instruction. The harm comes in emphasizing the testimony of one witness, regardless of how he or she is referred to. The instruction in this case suffers from this problem: there was only one witness, M.B., whose uncorroborated testimony could support Tinkham's conviction. Additionally, the *Ludy* opinion overruled *Burnett v. State,* 736 N.E.2d 259, 261 (Ind.2000), a case where, similar to this case, the jury instruction referred to the uncorroborated testimony of an "eyewitness," not a "victim" or "alleged victim."

The State also contends that any error in the challenged instruction was effectively cured by the instruction immediately following it, which stated in pertinent part:

> The testimony of a witness, if believed, beyond a reasonable doubt, may be sufficient to sustain a conviction; however, the testimony of a witness is not to be singled out from other evidence and is to be considered by you, in determining whether or not each element of the crime charged against the Defendant has been proven, by the State of Indiana, beyond a reasonable doubt.

App. p. 189. The State argues that the second phrase of the instruction sufficiently advises the jury not to place undue weight on one witness's testimony. We note, however, that the first phrase essentially repeats the erroneous instruction. Additionally, the second phrase is rendered confusing and unclear when, after advising the jury not to single out one witness's testimony, it goes on to provide that such testimony "is" to be considered by the jury, which would seem to *require* the jury to consider it, thus emphasizing that witness's testimony once again. We do not believe this instruction cures the error created by instructing the jury that it could find Tinkham guilty based "upon the uncorroborated testimony of a witness."

In sum, the challenged instruction was improper and not cured by other proper instructions. The question now is whether the error was harmless; we must conclude that it was not. M.B.'s testimony establishing Tinkham's guilt was uncorroborated by any physical evidence or any other witness's statements or testimony. Although M.B.'s taped interview with the police was also played for the jury, our supreme court recently stated, in a case where a child molestation prosecuting witness had testified in court, that her testimony was "uncorroborated," although apparently the mother also recited what the child had told her and a videotaped police interview was played for the jury. *Carter v. State,* 754 N.E.2d 877, 879–80 (Ind. 2001), *cert. denied,* —— U.S. ——, 123 S.Ct. 135, 154 L.Ed.2d 47 (2002); *see also Dinger v. State,* 540 N.E.2d 39, 40 (Ind. 1989) (not referring to videotaped police statement of child molestation victim as corroborating evidence of her trial testimony but referring to medical evidence and testimony of child molestation victim's brother and sister as corroborating). Thus, because M.B.'s testimony establishing Tinkham's guilt was in fact uncorroborated, unlike in *Ludy,* we cannot say that the giving of the erroneous instruction was harmless. Our supreme court expressly stated that the new rule it announced in

*Ludy* applies to those appellants "whose cases properly preserved the issue and whose cases are now pending on direct appeal." *Ludy*, 784 N.E.2d at 462. Given this language and the application of the *Ludy* rule to Tinkham's case, we conclude that we are compelled to reverse his convictions.

### II. Statements of Kim Tinkham

■ Because the issue may arise during a retrial, we consider whether the trial court erred in permitting the Office of Family and Children case manager to testify that upon first meeting Kim Tinkham, she stated, "I'm not going to throw away 19 years of marriage, you['re] not going to make me testify against my husband ... just take her [M.B.], she's not my f ... ing kid anyway." Tr. p. 380. Trial courts have wide latitude in ruling on the admissibility of evidence and in determining its relevancy. *Williams v. State*, 749 N.E.2d 1139, 1142 (Ind.2001). "Relevant evidence" is admissible and includes "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rules 401 and 402. Additionally, even relevant evidence should be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Evid. R. 403. Tinkham argues that the above statements of his wife were irrelevant to the charges against him and were highly prejudicial to his defense. The State counters that the statements were relevant to its claim that M.B. was placed under pressure from members of her family to recant her allegations against Tinkham.

Kim's challenged comments regarding M.B., especially the last one, are at the least disheartening and at the most callous, if not cruel. That is the problem with their admission. We find that any probative value the comments may have had on the issue of M.B.'s temporary recantation of the molestation allegation were very slight. There was other direct evidence from M.B. herself claiming she had been urged by family members to recant her allegation, thus making Kim's comments cumulative on that issue, assuming they had any probative value. We believe the minimal probative value the statements might have had was substantially outweighed by their prejudicial effect. The comments were in no way connected to Tinkham himself and bore little relevance to whether he molested M.B., but the hostile nature of the comments by a person who was M.B.'s de facto mother may have tended to elicit sympathy for M.B. in the eyes of the jury, which constitutes a confusion of the issues before it. The prosecutor also referred to the comments during closing argument, thus increasing their prejudicial effect. On retrial, the comments should not be allowed into evidence.

### Conclusion

We conclude, pursuant to *Ludy v. State*, that the trial court committed reversible error by instructing the jury, "You may convict the Defendant upon the uncorroborated testimony of a witness." Additionally, in the event of a retrial the trial court should not allow into evidence the statements of Kim Tinkham discussed in Part II of this opinion. We reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

RILEY and SHARPNACK, JJ., concur.