**Myron H. BUDNICK, Appellant (Respondent Below),**

v.

**Sandra A. BUDNICK, Appellee (Petitioner Below).**

No. 2–279A42.

Court of Appeals of Indiana, Second District.

Dec. 30, 1980.

Myron H. Budnick, pro se.

Kent M. Frandsen, Parr, Richey, Obremskey & Morton, Lebanon, for appellee.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Appellant Myron H. Budnick (Myron) appeals from a finding that a valid judgment against him exists, and from an order in garnishment, based upon the existence of that judgment, which was lodged against him in favor of law firms which represented his former wife, Sandra A. Budnick (Sandra), in a dissolution of marriage action.

We affirm.

### FACTS

The evidence and facts most favorable to the trial court's judgment are:

Myron and Sandra Budnick were married on October 19, 1963. On January 9, 1975, Sandra filed a petition for dissolution of marriage in the Hamilton Superior Court. On December 19, 1975, a decree and judgment for Dissolution, Custody, Division of Property, and Support was entered, providing, *inter alia*, that

14. The court further finds that Myron H. Budnick should pay reasonable attorneys' fees for his wife's attorneys, in the total amount of Seven Thousand Seven Hundred ($7,700.00)

Dollars. The firms representing Petitioner herein were Campbell, Kyle, Proffitt, Cook and Campbell, Noblesville, Indiana, and Parr, Richey, Obremsky and Morton, Lebanon, Indiana.

*R.* at 13. The decree also "Ordered, Adjudged, and Decreed that the parties herein confirm [sic] in accordance with the findings as set out above ..."

In its Entry of May 13, 1976, the trial court found that "the husband has failed to comply with the Decree of Dissolution in the following manner: ... (e) he has failed to pay attorneys' fees ordered paid in the amount of $7,700," and after reciting other failures of Myron to comply with the December 19, 1975 judgment added, "All of which is considered, ordered, adjudged and decreed." *R.* at 19–20. Judgment was thus again entered against Myron for all sums due and owing. He was found to be in contempt of court and ordered imprisoned commencing June 1, 1976 "until such time as he purges himself."[1] The May 13 order also required Myron to pay Sandra's attorneys the additional sum of $200 for the prosecution of the Motion for Rule to Show Cause. *R.* at 20.

On June 1, 1976, the trial court modified the May 13 order by entering judgment for Sandra in the amount of $13,336.50 plus interest, and held Myron in contempt for defaulting on mortgage payments. Other unpaid amounts assessed against Myron, not at issue here, were also encompassed in the June 1 order, which set Myron's cash bond on the contempt citation at $3,566.10. In all other respects, the May 13 order was confirmed. Myron was again ordered confined in the Hamilton County jail, commencing June 15, 1976, until he purged himself.

On July 27, 1977, an "Agreed Modification" was entered by the parties, which proposed to end the "continuing litigation involving these matters." *R.* at 23. The

---

1. Myron, an attorney, is bound as an officer of the court to obey its orders. "Obedience to law exemplifies respect for the law." E.C. 1–5, and attorneys must avoid "even the appearance of professional impropriety", Canon 9. "A lawyer shall not ... engage in conduct that is prejudicial to the administration of justice." D.R. 1–102(A)(5).

July 27 modification effected other aspects of the earlier orders. Significantly, however, in the portion of the modification entitled "Effect of Original Decree as Modified" the agreement states (in pertinent part)

> (b) To the extent that items 3, 8, 9, 10, 12 and 13 [of the original decree of December 19, 1975] have not been complied with by Myron, Sandra agrees that they shall be void and of no effect.

R. at 27.

The provision for attorneys fees, item 14 in the original decree, was *not* voided or alluded to in the Agreed Modification.

On February 1, 1978, an Affidavit for Proceedings Supplemental was filed in the Hamilton Superior Court against Myron on behalf of the law firms representing Sandra. Myron responded by having his counsel file a conclusory affidavit[2] claiming the Agreed Modification of July 26, 1977 satisfied the amounts due Sandra's lawyers, but giving no explanation as to why this was a fact. On January 17, 1979, the trial court entered judgment against Garnishee–Defendant, the law firm of Buschmann, Carr and Schabel, Myron's employer. R. at 38. The record does not disclose any attempt by Myron to challenge the original orders which were entered against him.

Myron acting pro se timely filed his praecipe and perfected this appeal.

**2.** In pertinent part the affidavit reads:

1. On the 27th day of July, 1977, Petitioner, Sandra A. Budnick, and Respondent, Myron H. Budnick, entered into an Agreed Modification which was approved, adopted, ordered and made judgment of the Court by the order of Richard T. Payne, Special Judge. Pursuant to the terms of said agreement, legal paragraph I(c), payments made under the Agreed Modification are in full and final satisfaction of all claims by the petitioner against the respondent.

2. Legal paragraph V of the Agreed Modification states the original decree and subsequent modifications awarded to Petitioner are deemed fully satisfied by the payments set out in the Agreed Modification between the parties and approved by the Court.

3. Those modifications referred to by the Agreed Modification approved and adopted by the Court include attorney's fees in the amount

## ISSUES

The ostensible issues posed by the parties are:

1. Were attorneys' fees awarded in the original decree and to whom were they awarded?

2. Did the modification of the decree of June 1, 1976 include the former award of attorneys' fees?

3. If there was a judgment for Sandra which included attorneys' fees on June 1, 1976, was it satisfied by the Agreed Modification approved by the court on July 27, 1977?

4. Do the firms of Parr, Richey, Obremsky & Morton and Campbell, Kyle & Proffitt have any direct claim against Myron which can be enforced by an order in garnishment?

5. Can the trial court allow Proceedings Supplemental before it determines that a judgment exists?

6. Can the trial court issue an order to a non–party to the litigation?

For convenience issues one and four have been consolidated.

## DECISION

*ISSUES ONE AND FOUR*—Were attorneys' fees awarded in the original decree and to whom were they awarded?

of $7,700.00 which were originally awarded by the Court to Petition on December 19, 1975, which award was subsequently modified by the Court on its own motion on June 1, 1976, wherein the Court modified the original decree to provide judgment for Petitioner against Respondent in the amount of $13,336.50, said judgment being the sum of the attorney's fees, expenses and outstanding bills as of that date.

5. [sic] It is clear from the entries of the Court which are binding upon all parties that the modification agreed to by Petitioner and Respondent on July 27, 1977, would, in fact, satisfy the judgment referred to in paragraph 4 above.

WHEREFORE, Respondent prays that the Affidavit for Proceedings supplemental filed by Petitioner's counsel be struck and held for naught. (R. at 34–5).

Do the firms of Parr, Richey, Obremsky & Morton and Campbell, Kyle & Proffitt have any direct claim against Myron which can be enforced by an order in garnishment?

*CONCLUSION*—Attorney fees were awarded to the named attorneys by the plain language of the Decree of December 19, 1975.

▪ Paragraph 14 of that Decree unequivocally stated that "Myron . . . should pay reasonable attorneys' fees for his wife's attorneys" and enumerates the firms involved. The findings are then incorporated into the judgment.[3] To argue, as Myron does, that fees were not awarded to the attorneys is utterly without merit, and to argue further that collection of the fees resides exclusively in Sandra is likewise meritless. I.C. 31–1–11.5–16 (hereinafter referred to as "the Statute") spells it out as clearly as it can be said:

Attorneys Fees. The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. *The court may order the amount to be paid directly to the attorney, who may enforce the order in his name.*

(Emphasis added).

We find no indication that this specific question has been addressed before, probably because its meaning is so unmistakably clear that there has been no necessity to do so. The language of a Statute is to be given effect according to its plain meaning, and as unambiguous as this language is, there is no room for construction. *Peru Cemetery Co. v. Mount Hope Cemetery of Peru*, (1946) 224 Ind. 202, 65 N.E.2d 849; *State v. Mears*, (1938) 213 Ind. 257, 12 N.E.2d 343; *Huber v. Robinson*, (1864) 23 Ind. 137. Obviously a cause of action has been created by the Statute in favor of an attorney(s) to whom fees have been awarded, which may be enforced "in his name." *Jarrell v. Brubaker*, (1898) 150 Ind. 260, 49 N.E. 1050; *Braun v. Loshe*, (1979) Ind.App., 390 N.E.2d 189.

Because garnishment is a remedy generally available for the enforcement of claims, I.C. 34–1–11–20 et seq.,[4] it logically follows that the rights granted to Sandra's lawyers by operation of I.C. 31–1–11.5–16 (the Statute) are enforceable through garnishment. The trial court was correct in so finding.

*ISSUE TWO*—Did the modification of the decree of June 1, 1976 include the former award of attorney fees?

*CONCLUSION*—The trial court did not grant a judgment which included attorneys' fees to Sandra by its June 1 modification.

The June 1 order is quite concise. It merely enters judgment for Sandra in the sum of $13,336.50 plus interest, holds Myron in contempt for failure to make mortgage payments and for failing to pay certain court appointed experts, and sets cash bond

---

**3.** The Decree of May 13, 1976 recognized that attorneys' fees had been awarded, were not paid, and again ordered payment.

**4.** In all personal actions arising upon contract, express or implied, or upon a judgment or decree of any court, if at the time such action is commenced or at any time afterwards, whether a writ of attachment has been issued or not, the plaintiff, or any person in his behalf, shall file with the clerk an affidavit that he has good reason to believe, and does believe, that any person, naming him, has property of the defendant of any description in his possession or under his control, or that such person is indebted to the defendant or has the control or agency of any property, moneys, credits or effects, or that the defendant has any share or interest in the stock of any association or corporation, and shall file therewith a written undertaking, payable to the defendant therein, with freehold surety, to be approved by said clerk, conditioned that he will prosecute his proceedings in garnishment to effect and will pay to the defendant all damages he may sustain if such proceedings shall be wrongful and oppressive, the clerk shall issue a summons notifying such person, association or corporation to appear at the ensuing term of the court and answer as garnishee in the action. The summons shall be directed to the sheriff and served and returned by him in the same manner as a summons is served and returned in other cases. *See also*, T.R. 69(E).

for Myron. "In all other respects the order of May 13, 1976 [was] confirmed." *R.* at 22. No mention is made of attorneys' fees.

Myron would have us believe that the judgment amount entered by the June 1 revision in favor of Sandra ($13,336.50) reflects an increment of $7,700.00, precisely the amount in question here. But other than this vague assertion there is nothing in the record to support him. He merely attacks a record not to his liking. The burden is on him to provide a record that supports his allegations of error. *Buchanan v. State,* (1975) 263 Ind. 360, 332 N.E.2d 213; *Johnson v. State,* (1972) 258 Ind. 648, 283 N.E.2d 532; *Anderson v. Indiana State Emp. Appeals Com'n.,* (1977) Ind.App., 360 N.E.2d 1040.

■ Further, the trial court's order of January 17, 1979 reflects its interpretation of its own records in this case, i. e., that Sandra had *not* been paid the fees. The court judicially knows its own records. *Starkie v. State,* (1943) 113 Ind.App. 589, 49 N.E.2d 968; *accord, State v. Simpson,* (1906) 166 Ind. 211, 76 N.E. 544.[5] In this case, the later (January 17, 1979) ruling of the trial court reflects judicial notice taken of the earlier determinations involving the same parties which were vital to the determination of the action. *Ensor v. Bennett,* (1921) 76 Ind.App. 467, 132 N.E. 379. Thus, we accept the trial court's determination which was implicit in the January 17 garnishment order. *In re Harrison,* (1953) 231 Ind. 665, 109 N.E.2d 722.

*ISSUE THREE*—If there was a judgment for Sandra which included attorneys' fees on June 1, 1976, was it satisfied by the Agreed Modification approved by the court on July 27, 1977?

*CONCLUSION*—None of the decrees of the trial court indicate in any manner satisfaction of the attorneys' fees awarded.

To the contrary, the record shows that the decrees entered lead inescapably to the conclusion that the attorneys' fees awarded were not paid, and this is just as true of the July 27, 1977 modification which enumerated certain items from the original decree (December 19, 1975) which were voided and superseded. Item 14 of that original decree providing for attorneys' fees was conspicuous by its absence.

*ISSUE FIVE*—Can the trial court allow Proceedings Supplemental before it determines that a judgment exists?

*CONCLUSION*—The trial court had a judgment on which it could base proceedings supplemental.

■ Again, Myron does not supply us with a record containing the required transcript of the hearing in proceedings supplemental which he contends was error to conduct.[6] It is his duty to present an adequate record to support alleged error. *Ross v. State,* (1978) Ind., 376 N.E.2d 1117, cert. denied 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50, A.P. 7.2.

■ However, we will comment. The judgment against Myron for Sandra's attorneys' fees was entered December 19, 1975 and remained unchanged thereafter. We have already determined that by the plain language of the Statute (I.C. 31–1–11.5–16) attorneys owed fees by court order can "enforce the order in their own name." Neither the subsequent (June 1, 1976) modification nor the (July 27, 1977) Agreed Modification affected Myron's liability for attorneys' fees. Obviously the trial court, therefore, had a judgment on which to base Proceedings Supplemental.

*ISSUE SIX*—Can the trial court issue an order to a non–party to the litigation?

*CONCLUSION*—This issue is waived.

Myron's entire argument on this issue is: Also, the trial court has entered an order to Buschmann, Carr and Schabel, a non–party, without notice, examination or

---

5. The commentators have recognized that "it is settled, of course, that the courts, trial and appellate, take notice of their own respective records in the present litigation, both as to matters occurring in the immediate trial, and in

previous trials or hearings." McCormick, *Evidence,* 2d Ed. § 330 at 766 (1972).

6. Sandra's brief does refer to a hearing held "on such matters in April of 1978."

hearing directing Buschmann, Carr and Schabel to garnish the wages of Myron H. Budnick. This order is beyond the jurisdiction of the court until such time as Buschmann, Carr and Schabel is made a party.

Myron's brief at 15. Such a naked assertion is not only specious but has no foundation in the record. A.P. 8.3(A)(7) requires that

> The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review.

*Id.*

### Application of Appellate Rule 15(G)

■ To recapitulate: The unmistakable language of the decree of December 19, 1975, orders Myron to pay attorneys' fees to his wife's attorneys; the court's entry of May 13, 1976 found that such fees had not been paid and again ordered them paid; the trial court's order of June 1, 1976 changed certain aspects of the court's previous orders totally unrelated to attorneys fees and confirmed the previous court order of May 13, 1976 in all other respects; the same was true of the Agreed Modification of July 27, 1977, leaving in full force and effect the original decree of December 19, 1975 as to payment of attorneys fees (item 14); Myron failed to challenge any of the orders entered against him in a timely fashion, the record shows only that he failed to comply with them; the record fails to support any allegation of error as to the proceedings supplemental; the threadbare argument in Myron's pro se appellant's brief is devoid of cogency and pertinent authority; and there

is a clear and unambiguous statute giving attorneys who are awarded attorneys fees a right to enforce the collection thereof in their own name.

The net result of our examination of the record and his brief indicates a calculated effort on Myron's part to evade over a five year period the dictates of court orders and the specific language of a statute. The issues he attempts to raise in this appeal are either waived or founded on his refusal to deal with the unmistakable language of the orders of the trial court and the applicable statute. When viewed in context they do not have even the color of valid legal argument. The fact that the statute has not been construed before is of no help to Myron. The statute is specific, unambiguous, and spells out the right of the trial court to order attorneys fees and the right of the attorneys to enforce them. Myron offers not even the semblance of an argument as to why the statute should not be followed.

Thus, we can only conclude that Myron, a member of the Bar of this State, has pursued this appeal in bad faith,[7] and that damages should be assessed in favor of the named law firms in the amount of 10% of the amount awarded them by the trial court in 1975.

This exercise of our discretion is based on Appellate Rule 15(G) which says:

> Damages Against Appellant. If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten per cent (10%) upon the judgment, in money judgments, and in other cases in the discretion of the court; and the court shall remand such cause for execution.

A.P. 15(G).

The most recent interpretation by the Indiana Supreme Court of Rule A.P. 15(G)

---

**7.** We also observe that the code of Professional Responsibility provides:

DR7–102 Representing a Client Within the Bounds of the Law.

(A) In his representation of a client, a lawyer shall not:

(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve

merely to harass or maliciously injure another.

(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

*Compare, In Re Lemond,* (1980), Ind., 413 N.E.2d 228.

pertinent to our situation appears in *Annee v. State*, (1971) 256 Ind. 686, 274 N.E.2d 260, (on rehearing):

> "The damages of ten percent (10%) allowed under A.P. 15[G] are discretionary with this Court and we feel they should not be issued without a strong showing of bad faith on the part of the [appellant]."

*Id.* at 692, 247 N.E.2d at 261.

Cases, particularly recent ones on this subject are not numerous. In 1972 this court summarized the cases in this manner:

> "Our Supreme Court has held that such a discretionary award of damages is proper where an appeal is frivolous, or without substance or merit. *Marks v. Bremmer* (1917), 186 Ind. 434, 116 N.E. 738; *Bradford Homes, Inc. v. Long* (1942), 221 Ind. 309, 47 N.E.2d 609; *Kroeger Laundry & Dry Cleaners, Inc. v. Williams* (1942), 221 Ind. 299, 47 N.E.2d 612. Likewise, this court held in *Vandalia R. Co. v. Walsh* (1909), 44 Ind.App. 297, 89 N.E. 320, that when an appeal is taken only to harass or delay the appellee, 'thus presenting an illustration of vexatious litigation, that crowds our courts to the detriment of meritorious actions, and which should not go unrebuked,' a penalty of ten per cent will be assessed against the appellant."

*Krick v. Farmers & Merchants Bank of Boswell*, (1972) 151 Ind.App. 7 at 19, 279 N.E.2d 254 at 261. *See also American Savings & Loan Ass'n. of Hammond v. Hoosier State Bank*, (1975) 167 Ind.App. 43, 337 N.E.2d 486; *King v. Pollard*, (1974) 160 Ind.App. 209, 311 N.E.2d 454; *Kourlias v. Hawkins*, (1972) 153 Ind.App. 411, 287 N.E.2d 764.

The Judgment is affirmed, and this case is remanded to the trial court to modify its judgment to include interest, 10% damages as indicated, and for any further proceedings consistent herewith.

Affirmed.

MILLER and STATON, JJ., both sitting by designation, concur.