**In re the Marriage of Robert N. BOWEN, Respondent-Appellant,**

**v.**

**Karen S. BOWEN, Petitioner-Appellee.**

**No. 2–680 A192.**

Court of Appeals of Indiana, Fourth District.

June 30, 1981.

David W. Foley, Indianapolis, John S. Pearce, Smith, Pearce, Barr & Howard, Noblesville, for respondent-appellant.

Jay N. Given, Given, Dawson & Cappas, East Chicago, Gregory F. Hahn, William T. Rosenbaum, Dillon, Hardamon & Cohen, Indianapolis, John D. Proffitt, Campbell, Kyle & Proffitt, Noblesville, for petitioner-appellee.

MILLER, Judge.

In the instant appeal, Robert N. Bowen (husband), the respondent-appellant from the final decree in a dissolution of marriage proceeding filed by his former wife, Karen S. Bowen (wife), contends the trial court awarded patently excessive fees to his wife's attorneys. He claims the court thus abused its discretion and acted contrary to law when it determined on January 2, 1980 the amount of his wife's reasonable attorney's fees to be approximately $51,000, including previous preliminary awards. Earlier, on November 9, 1979 the court had entered its "final decree" in this case, which

decree resolved all of the material issues before it, except the amount of attorney's fees, including division of all property and child custody and a finding that the husband be "ordered to pay the attorney's fees [of the wife] in an amount and in a manner to be determined at a hearing to be held, or upon evidence submitted to the court on the 20[th] day of November, 1979." The record reveals the parties later agreed this determination could be made solely on affidavits. Affidavits were submitted by the wife but not by the husband. For the reasons set forth below, we affirm.

Karen Bowen filed her petition on May 1, 1975, and some four and one-half years later the parties arrived at a settlement agreement which was adopted by the trial court in its decree dated November 9. In the interim time period before settlement, it appears counsel for the parties expended substantial amounts of time representing their clients' interests, since the record reflects that on two occasions, August 30, 1976 and December 29, 1976, trial dates were fixed for the purpose of hearing the cause as a contested matter,[1] and that presumably in anticipation of such litigation, the husband requested (and received) a change of venue, and the wife hired expert witnesses and filed discovery requests including interrogatories and a motion to produce various documents. Of course, the evidence pertinent to this appeal also suggests, as discussed below, that considerable time was additionally spent by the parties' attorneys in their negotiation and preparation of the final settlement agreement, which document resolved the custody of three minor children and the disposition of substantial marital property, the value of which was not specified in the settlement agreement (nor revealed in the affidavits of the wife's attorneys), including two homes and additional unimproved real estate, life insurance policies, partnership interests, trust incomes, oil and mineral interests, a boat, stock accounts including stock in what is apparently the husband's own company, plus cash payments to the wife totaling $509,726.91.

Significantly, in their settlement agreement the parties did not reach any consensus regarding payment of attorney fees. The court's final decree incorporating their settlement provisions, however, did make a determination on this issue, as noted earlier, that the husband should be ordered to pay the attorney fees of the wife. Following such initial decree, the provisions of which, significantly, the husband did not attack in his Motion to Correct Errors, the husband requested and received a continuance of the scheduled hearing on the amount of attorney fees,[2] and later requested, on December 20, 1979, that such amount be determined solely on the basis of affidavits to be submitted by the parties. In his pleading entitled "Waiver of Hearing," the husband stated:

"Comes now the Respondent-Husband, and waives the requirement for a hearing as set out in rhetorical paragraph 9 of the final decree entered and filed herein on or about the 9th day of November, 1979. That Respondent respectfully shows the Court that as to said requirement for hearing as set out in said rhetorical paragraph of said final decree, that he has read the same and desires that such evidence be submitted to the Court in the form of affidavits and counteraffidavits with supporting documents.

WHEREFORE, Respondent Robert, N. Bowen, Jr., respectfully requests the court approve this waiver of that hearing which was originally heretofore set for the 20th day of November, 1970, at 3:00 p. m., and all other proper relief in the premises."

---

1. The original hearing date was re-set following the wife's petition to hire experts. Subsequently, the wife filed an additional motion, on December 28, 1976, requesting a continuance from the second scheduled hearing date in light of settlement negotiations and because the husband's counsel was "unavailable for trial."

2. On November 30, 1979, which was 10 days after the originally scheduled hearing date, the husband's attorney filed his motion for extension of time to file affidavits on the issue of attorney's fees "for the reason that counsel has been unable to confer with his client during the past week."

Surprisingly, the husband did not submit any affidavits, although the wife's attorneys requested, by their affidavits, total fees of over $99,000, such affidavits detailing approximately 920 hours pertaining to the dissolution negotiations and proceedings, which they described as "an extremely complicated and complex matter involving a great deal of property and tax ramifications and [which] has been in existence for a period of years . . . ." Thereafter, on January 2, 1980, the court awarded fees for the wife's attorneys of some $45,000, in addition to previous preliminary orders totaling $6,000, so that the ultimate award represented approximately 50 per cent of the amount requested by the wife's attorneys.

The husband has attempted to raise two essential questions in the instant appeal, although we conclude, as discussed below, he has waived one of them. These issues are: 1) was it improper for the trial court to make any substantial award of attorney's fees where the wife allegedly failed to present evidence of the net worth and earning ability (including the ability to pay such fees) of each of the parties;[3] and 2) did the wife prove it was necessary or reasonable for her attorneys to be compensated, as they requested, for approximately 920 hours of work on her case?

We must first consider the relevant language of Ind.Code 31–1–11.5–16, where our Legislature has provided, with respect to attorney's fees in an action for dissolution of marriage, that:

"The court from time to time may order a party to pay *a reasonable amount* for the cost to the other party of maintaining or defending any proceeding under this chapter [IC 31–1–11.5–1–31–1–11.5–24] and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name." (Emphasis added.)

Additionally, we also note, with respect to this Statute, our appellate tribunals have repeatedly held "[t]rial courts have broad discretion in granting attorney fees," *Macauley v. Funk*, (1977) Ind.App., 359 N.E.2d 611, 614, *citing Delong v. Delong*, (1974) 161 Ind.App. 275, 315 N.E.2d 412 and *Farley v. Farley*, (1973) 157 Ind.App. 385, 300 N.E.2d 375, and that "[o]n appeal, the only question presented is whether the trial court abused this discretion by its decision to grant payment of fees." *Macauley v. Funk, supra* at 614, citing *Dragoo v. Dragoo*, (1962) 133 Ind.App. 394, 182 N.E.2d 434. *See also In re Marriage of Lewis*, (1977) Ind.App., 360 N.E.2d 855, 856.

In applying the principles of IC 31–1–11.5–16 to the instant case, we conclude the husband has failed to demonstrate any abuse of discretion with respect to his first claim of error—whether it was proper without more evidence of the parties' economic circumstances to award *any* substantial attorney's fees—because such question was not properly presented to the trial court, and accordingly cannot be meaningfully reviewed on appeal.

In this regard, the husband made no objection in his Motion to Correct Errors, as noted above, to the trial court's final decree on November 9 designating him as the party responsible for his wife's reasonable attorney fees, despite the fact such fees would obviously bear some proportionate relationship to the parties' substantial property, the protracted nature of their dispute, and the resolution of such issues by virtue of a lengthy settlement agreement. Under the circumstances, the fees to be awarded would clearly exceed the nominal, "routine"

---

**3.** In this regard the husband cites, for example, *Brown v. Brown*, (1973) 157 Ind.App. 672, 301 N.E.2d 400, where the Court observed, quoting *O'Connor v. O'Connor*, (1969) 253 Ind. 295, 304, 253 N.E.2d 250, 254:

"There may be instances where the financial situations of the parties are such that any allowance against the husband would be unreasonable and unjustified. There must therefore be read into the language of the statute a proviso to the effect that the court shall make the order provided for if a timely and proper application or petition is presented and the facts justify an allowance."

assessment which the husband now contends is the only award a court may make without specific evidence of the parties' assets and earning ability. A contention is waived if it is not properly raised in a Motion to Correct Errors and thus brought to the attention of the trial court. *See* Ind.Rules of Procedure, Trial Rule 59(D) and Ind.Rules of Procedure, Appellate Rule 8.3(A)(7), *and see, e. g., Hooks v. State,* (1980) Ind., 409 N.E.2d 618, 619. In the instant case, by its express terms the husband's Motion to Correct Errors was directed only to the January 2, 1980 judgment in which the final amount of $45,000 was awarded, with respect to which it was contended that amount was "excessive, not supported by sufficient evidence, an abuse of discretion, and contrary to law." Accordingly, whatever may be the merits in a different case of the husband's contention that no substantial fees may be awarded in the absence of specific evidence regarding the economic circumstances of each of the parties, it is clear that, in the case at bar, he has not preserved an attack on the court's initial finding of his responsibility for his wife's attorney fees, a finding which implicitly determined he was financially able to do so. Thus, although this initial finding might have been erroneous under the reasoning of *O'Connor v. O'Connor, supra* (by requiring the husband to pay the wife's attorney fees without evidence justifying such an obligation), since such finding remains unchallenged, the husband can now properly argue only that it was an abuse of discretion for the trial court, based on the evidence in the record before it, to make the particular final award which it did, namely, approximately $45,000.

■ This second argument regarding the reasonableness of the particular fee award relies upon the husband's conclusion that under the circumstances, the amount *requested* by the wife's attorneys (over $99,-000 for 920 hours) was excessive, and upon his suggestion such a flagrant request nullifies any award but a nominal one.[4] Of course, our review of the trial court's action is concerned with what was awarded, rather than what the prevailing party requested. Based on the wife's affidavits, this Court cannot conclude it was an abuse of discretion to award $51,000 for the work which was done.

■ Initially, we note the trial court did not indicate whether, in making such award, it was reducing the number of hours, the hourly rate, or some combination of each of these in arriving at approximately 50% of the total fee requested by the wife's attorneys. This Court would be required to affirm, however, if the particular fees awarded would be reasonable based on any of these calculations, since a Court on appeal will uphold the trial court whenever its decision can be sustained on any legal theory which the evidence supports. *E. g., Indiana Broadcasting Corp. v. Star Stations,* (1979) Ind.App., 388 N.E.2d 568. The husband presents no argument that the *hourly rates* requested by the wife in the case at bar were excessive.[5] Accordingly, our analysis will only consider whether the award at issue, consisting of 50 per cent of the requested amount, is supported by evidence creating a reasonable inference the wife's attorneys worked at least one-half of the 920 hours they alleged, or approximately 460 hours.

In this regard, the husband concedes that as of December 29, 1976, the second date the case was set for trial, the wife's attorneys could arguably have expended 250 hours preparing for the litigation, since he merely argues in his brief that "[a]ll of these facts show that the wife's attorneys

---

4. He concedes, however, the fee could possibly be as much as $12,000 to $15,000, presenting as a basis for this argument a letter dated December 1, 1977 sent by the wife's attorney during the settlement negotiations, which letter was attached to his Motion to Correct Errors. Neither this Court nor the trial court can consider such "evidence" presented after the trial of the

cause. *See Collins v. Dunifon,* (1975) 163 Ind. App. 201, 323 N.E.2d 264.

5. These rates were $125.00 per hour in the case of attorney Jay N. Given, and $75.00 per hour each in the case of attorneys Gregory F. Hahn and John D. Proffitt.

could not have had more than 250 hours in the case when they were first prepared to try the case." Thus, the only question for this Court is whether there was credible evidence that in the three years of proceedings and negotiations following that date, the wife's attorneys reasonably expended at least 200 hours of their time (less than two full weeks per year) on her case.

■ We conclude the information available to the trial court, consisting in part of the detailed affidavits of the wife's attorneys describing their collective efforts with their client and others in preparing for the settlement of this matter as well as for its litigation, was more than adequate to support the trial court's determination. Thus, it is clear from the record, we believe, that representation of either of the parties to the instant litigation involved more than the routine considerations of a typical proceeding for dissolution of a marriage. As noted above, the parties' own settlement agreement provided, in part, for payments to the wife of over half a million dollars, in addition to the disposition of real estate, oil and mineral rights, stock accounts, and other significant assets, and thus was some evidence in itself before the trial court suggesting the complexity and magnitude of the competing interests and considerations involved in the case at bar. See U.S. Aircraft Financing, Inc. v. Jankovich, (1980) Ind.App., 407 N.E.2d 287, where we observed in discussing the question of attorney's fees that, with respect to such issue, the trial court may appropriately look to the record of proceedings before it, including documents filed by counsel. Presumably, while the parties were attempting to settle the distribution of these significant assets, it was also necessary for their attorneys (as the wife's affidavits reveal) in such transaction to remain prepared over the course of three years for the eventuality that the case might in fact go to trial as originally envisioned. Accordingly, the affidavits reflect that during these years, in addition to over 120 hours which were *expressly* expended on settlement efforts, there also were numerous conferences with the wife herself, by telephone and in person, as well as conferences with experts and other work pertaining to discovery and trial preparation.[6] Thus, unlike the situation discussed and disapproved of by this District in cases such as *U.S. Aircraft Financing, Inc. v. Jankovich, supra* and *In re Estate of Kingseed,* (1980) Ind.App., 413 N.E.2d 917, 933–34 when no evidence is presented to the trial court upon which to form a basis for the award of attorney's fees, the record here—composed in most respects of detailed time records for the various attorneys involved—is ample to support the fees awarded.[7]

---

6. Although the husband also suggests the award of preliminary fees of $1,000 in May, 1975 and of $5,000 in May of 1978 should be dispositive of the reasonable value of services performed to those dates, we note, in this regard, the conclusion of the Court in *Castor v. Castor,* (1975) 165 Ind.App. 520, 333 N.E.2d 124, 127 that

"[P]reliminary or interlocutory fees awarded may not compensate for all time and services rendered to that time but such services as are not compensated by the preliminary fee award are recoverable through a subsequent order or through the final decree. Such final decree may consider all legal services rendered during the course of the proceeding, place a value upon such services as are to be paid by the opposing party, and may award a fee reduced by the amount of any preliminary fee awards assessed and paid."

While the husband also argues in his brief there must necessarily have been a duplication of effort by the wife's attorneys, the uncontradicted affidavit of the wife's attorney Jay Given states "the time spent by affiant's co-counsel was not a duplication of time or effort since, in general, each attorney had different areas of responsibility except for several matters in which all attorneys were required to be present in order to prepare for trial and/or attempt to settle this matter."

7. It is again urged, as in the cited cases, that in order to resolve all doubts regarding the propriety of attorney's fees and to avoid, challenges to the award, the guidelines expressed in the *Code of Professional Responsibility,* DR 2–106(B), setting forth the various factors to be considered (such as the difficulty of the questions involved, the time and labor required, and the fee customarily charged in the locality for similar legal services) might properly *be addressed with specificity* either by testimony or in affidavits submitted by the attorneys.

Having thus disposed of the essential issue in this appeal, we now address the wife's request for punitive damages of ten per cent of the judgment, pursuant to Ind. Rules of Procedure, Appellate Rule 15(G),[8] owing to the allegedly frivolous nature of the husband's appeal. While this request is not without some merit, particularly in light of the fact the husband, before initiating the instant appeal, did not submit any counter-affidavits to the trial court on the question here at issue, we nevertheless conclude the facts do not reveal a " 'strong showing of bad faith on the part of the [appellant],' " *Budnick v. Budnick*, (1980) Ind.App., 413 N.E.2d 1023, 1029, *quoting Annee v. State*, (1971) 256 Ind. 686, 692, 274 N.E.2d 260, 261, which is the standard our courts have adopted in applying this discretionary relief.

The decision of the trial court is affirmed.

YOUNG, P. J., concurs.

CHIPMAN, J., concurs in part and dissents in part with opinion.

CHIPMAN, Judge, concurring in part and dissenting in part.

I concur with the majority as to the disposition of the issue as to whether the award of attorneys' fees was excessive. I dissent, however, as to the denial of 10% damages as provided by Ind.Rules of Procedure, Appellate Rule 15(G).

The majority cites as an authority for this denial the decision of *Budnick v. Budnick*, (1980) Ind.App., 413 N.E.2d 1023. The facts in *Budnick* reveal that the husband was ordered on December of 1975 to pay his wife's attorneys' fees and failed to do so. In May of 1976 the court found, after hearing, that these fees had not been paid and again ordered the husband to pay them. Thereafter, in June of 1976 and July of 1977 certain modifications were made to previous orders, none of which dealt with the issue of attorneys' fees. The husband failed to comply with any of the orders and ultimately appealed an adverse ruling from a garnishment proceeding initiated in order to collect the attorneys' fees. In the *Budnick* case our Court awarded 10% damages as provided under Rule 15(G) and stated that it should be done only after a strong showing of bad faith on the part of the appellant. I believe in the present case that such a showing of bad faith has been demonstrated.

The record in this case shows that Mrs. Bowen filed her Petition for Dissolution on March 1, 1975. After a number of subsequent actions and continuances, the final decree was entered on November 9, 1979. The final decree provided the husband was to pay the wife's attorneys fees in an amount to be determined after an evidentiary hearing on November 20, 1979. Although the hearing was not conducted, the husband filed a pleading on December 20, 1979, requesting a waiver of such hearing and indicating the evidence would be based on affidavits and counter affidavits. Prior to that time the wife's attorneys had filed affidavits showing the expenditure of approximately 918 hours at hourly rates ranging from $75 to $125 for a total sum of $99,187.50. The husband's attorney did not file either counter affidavits or any memorandums in opposition to the award of attorney's fees and the trial court on January 2, 1980, ordered the payment of an additional $45,000 legal fee making a total fee to the wife's attorneys in the sum of $51,000. Thereafter the husband filed his motion to correct errors and this appeal was perfected.

Considering the appellant's specific waiver of his right to a hearing on the issue of fees and requesting that the fees be determined by affidavits and counter affidavits and then his failure to produce any such documents, it would appear an appeal to this court would be for the sole purpose of delaying the payment of the legal fees and,

8. The Rule therein provides:
   "If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten per cent (10%) upon the judgment, in money judgments, and in other cases in the discretion of the court; and the court shall remand such cause for execution."

in effect, harassing the appellee. It is my opinion there has been a strong showing of bad faith on the part of the appellant and therefore my dissent as to this issue.